ALVORD E. WINCHELL vs. GEORGE E. CONEY AND OTHERS.

Hartford District, March T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, JS.

It is not necessary that a note should be described with entire accuracy in the condition of a mortgage given to secure it. It is enough if it appears with reasonable certainty to be the note intended.

Notes for a large amount were payable in five years from date " with interest annually at six per cent." but were described in a mortgage as "bearing interest at six per cent. per annum." In a suit for foreclosure for non-payment of annual interest and for a reformation of the mortgage, it was held—

1. That the notes expressed the real contract between the parties as to the time of payment of interest, and controlled the description of them in the mortgage.

2. That the description of them in the mortgage as "bearing interest at six per cent. per annum," was sufficient to put a purchaser of the property on inquiry as to the time of payment of interest expressed in the notes.

3. That the mortgage and notes taken together made the former a security for the payment of annual interest, and that against a subsequent purchaser as well as the original mortgagor, and that no reformation of the mortgage was necessary.

A case in the Superior Court was, in form, removed to the United States Circuit Court, which court held that it was not removable. Held that the action of the former court in allowing the application for removal, accepting the bond given, and treating the case as no longer in court, did not operate as a dismissal of the case for want of jurisdiction, but that it still remained in the Superior Court.

Winchell *v.* Coney.

The action of the clerk in restoring the case to the docket was all that was necessary, and this action could be taken without an order of the court.

An appeal to the Supreme Court from the order of removal made by the Superior Court, did not take it out of the latter court.

In proving the value of property for the purposes of a foreclosure the rental value may be shown. Also what it would cost to reproduce the buildings.

In showing the rental value it is questionable whether the mere judgment of an expert would be proper evidence. The rents actually received, deducting therefrom the expense, would ordinarily be the proper proof.

[Argued March 9th—decided April 10th, 1886.]

Suit for the reformation of a mortgage and for a foreclosure; brought to the Superior Court in New Haven County. The defendants were Peter R. Carll, the original mortgagor, and George E. Coney, a purchaser of the mortgaged property, who alone made defense. The facts were found and the case reserved for the advice of this court at its next session in Hartford. The points of law decided by the court will be sufficiently understood without a statement of the facts, which are of much complication and would require much space.

*J. W. Alling*, for the plaintiff.

*S. E. Baldwin* and *J. H. Whiting*, for the defendant Coney.

CARPENTER, J. This is a suit to foreclose a mortgage. The mortgage was given to secure three notes amounting to $21,000. The three notes bear the same date, are payable in five years from date, "with interest annually at six per cent." These notes are described in the mortgage as follows:—" One note for five thousand dollars, dated May 10th, 1881, bearing interest at six per cent. per annum, payable five years from date ; one note for six thousand dollars, dated May 10th, 1881, payable five years from date, bearing interest at six per cent. per annum ; and one note for ten thousand dollars, dated May 10th, 1881, payable five years from date, bearing interest at six per cent. per annum."

The complaint as amended shows the terms of the note

and the condition of the mortgage deed, alleges a mutual mistake, by which the parties failed to state in the condition of the mortgage that the interest was payable annually, and prays for a reformation of the mortgage, for a foreclosure, and for possession.

One of the defendants is a non-resident. He attempted to remove the case to the Circuit Court of the United States. From that attempt arises a question as to the jurisdiction of the Superior Court.

The defendant Coney denies that the deed can be reformed as against him. There are also some questions made as to the admission of evidence, the propriety of the amendments, &c. But passing by all other questions for the present, we will first consider whether the plaintiff is entitled to a foreclosure of the mortgage as it stands. If he is, many of the questions discussed are of little importance.

As no part of the principal secured by the mortgage is now due, a foreclosure can only be for interest due and unpaid. The condition of the mortgage does not, of itself, show that the interest is payable before the maturity of the notes; but it purports to secure the notes "according to their tenor." The condition is—"Now, therefore, if said notes shall be paid according to their tenor, then this deed shall be void and of no effect; otherwise it shall remain in full force."

The notes are all alike except in the amount. Omitting that, they all read—"Five years after date for value received, I promise to pay Alvord E. Winchell or order,       dollars, with interest annually at six per cent." We interpret that as a promise to pay interest annually. That is the obvious meaning of the words and is doubtless what the parties intended. So that the real question is, whether the condition sufficiently describes the notes to secure the payment of annual interest as against Coney, who has acquired an interest in the equity of redemption from the mortgagor.

A large number of cases have been decided by this court respecting the certainty required in the description of debts secured by mortgage. It has been held that the nature of

the debts must be truly stated—whether by note, bond or open account; that the amount of the debt must be stated, not with exactness, but as nearly as may be, fairly and without fraud; and the character of the indebtedness, whether contingent or absolute. In all these respects this description meets the requirements fully. It goes further, and gives the terms of the notes in part—the date, when payable, and the rate of interest. But it fails to tell us when the interest is payable. Is that failure simply an omission, or does it amount to a false description? We think it is an omission merely. If a note is given on time with interest, and the time for the payment of the interest is not specified, it is payable when the principal is. The same rule of construction however ought not to be applied to the condition of the mortgage. The object of each instrument differs widely from that of the other. The object of the note is to embody the contract between the parties. Of course it must be complete in itself and express the whole contract. The intent of the parties must be gathered from the language used. The object of the other is to identify the note or debt secured by the mortgage and give reasonable notice of the extent of the incumbrance. All the terms of the note are not essential to that object; hence all need not be stated. The particularity required in making a contract is not required in describing it. Hence it may be safely assumed that some particulars may be omitted in the description. Therefore the failure of the condition to tell us when the interest is payable does not necessarily afford ground for the inference that it is payable when the principal is, especially in notes for a large amount and with a long time to run. It is a matter of common observation that a large portion of the indebtedness of the world pays interest annually or oftener—as national, state, municipal, and corporation bonds. So also with long time loans by savings banks and insurance companies. Loans by individuals are hardly exceptions to the rule. We apprehend that it is an unusual occurrence to find a loan for a large amount, to run for more than one year, unless it is stipulated that interest shall

be paid annually at least. Therefore there can be no presumption that payment of interest was to be postponed for five years.

Moreover, the condition required the mortgagor to pay the notes according to their tenor. Obviously "their tenor" was not wholly expressed. There was one omission, and that omission was the subject of conversation between Coney and the mortgagor before he took his deed. He sought information, but not from the right source. The mortgage pointed him directly to the notes. He could there obtain definite, certain and precise information. Instead of inquiring in that direction he chose to rely upon the uncertain, and, as it proved, the unreliable recollection of the mortgagor. That was his own folly. He was not deceived or misled by the record.

We have no case in this state directly in point. In the cases in which the general question is discussed we find no principle which would make this description fatally defective. On the other hand certainty of description in every particular is dispensed with, provided the record gives reasonable notice of the nature and extent of the incumbrance. *Stoughton* v. *Pasco*, 5 Conn., 442; *Merrills* v. *Swift*, 18 Conn., 257.

But there are cases in other jurisdictions which more closely resemble this. In *Richards* v. *Holmes*, 18 Howard, 143, a case very much like this, Mr. Justice CURTIS says:—
"It was argued that the trust deed does not describe the note as bearing annual interest, and consequently that the subsequent incumbrancer has a right to insist that, as against him, there was no power to sell for non-payment of such interest. It is true the deed does not purport to describe the interest which is to become due on the note; but it clearly shows that it bore interest at some rate, and payable at some time or times, and this was sufficient to put a subsequent incumbrancer on inquiry as to what the rate of interest and the time or times of payment were. The deed in effect declares, and its record gives notice to subsequent purchasers, that its purpose is to secure the payment of such

interest as has been reserved by the note; the amount, and date, and time of payment of which are mentioned. We do not think the mere omission to describe in the deed what that interest was to be, is a defect of which advantage can be taken by the complainants."

In *Pierce* v. *Parker*, 4 Met., 80, a note was described in a deed of release as payable May 21st, 1834, when in fact it was payable April 21st. It was held that parol evidence was admissible to identify the note. The court says:— "And it is a well-settled principle of law that when an instrument, which is offered to prove the subject matter described, differs in one or more particulars from the thing · described, evidence is admissible to show their agreement or identity, notwithstanding such misdescription."

In *Worthington* v. *Hylyer*, 4 Mass., 196, PARSONS, C. J., says:—" But if the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the conveyance, that the intent of the parties may be effected."

In *Bourne* v. *Littlefield*, 29 Maine, 302, the condition of a mortgage deed was, that if the mortgagor or his assigns should pay five hundred dollars at a future specified time, then the deed, as also a note bearing even date with it, given by the mortgagor to the mortgagee to pay that sum at the time stated, should both be void. In a bill to redeem it was held that parol evidence was admissible to show that a note of five hundred dollars, payable on demand with interest, was the one secured by the mortgage. Surely if a misdescription may be corrected by parol evidence, a defective description, which defect the note when produced will supply, cannot be a serious objection, and cannot impair the security. See also *Johns* v. *Church*, 12 Pick., 557; *Hall* v. *Tufts*, 18 id., 445; *Jackson* v. *Bowen*, 7 Cowen, 13.

In *Webb* v. *Stone*, 24 N. Hamp., 282, the marginal note is as follows:—" It is not necessary that all the particulars of the note secured should be set forth in the condition of the mortgage. It is enough if it appears with reasonable cer-

tainty to be the note intended." In *Cleavenger* v. *Beath*, 53 Ind., 172, the note did not correspond with the description of the note in the mortgage. It was held that the note controlled and cured the defective description in the mortgage. These cases illustrate the distinction we would emphasize— that that part of a contract describing the subject matter to which it relates need not be certain in itself, and does not require that degree of certainty that is required in defining the thing to be done by each of the contracting parties. One object of the condition of a mortgage is to point out the debt intended to be secured thereby. It of itself imposes no obligation upon either of the parties. It is descriptive in its character, and is like the descriptive part of a deed, or other instrument of conveyance, describing the property conveyed. It need only point out the thing conveyed with reasonable certainty. It is not required that the description shall be certain and precise in every particular.

That these notes were sufficiently described for all the purposes of identity can admit of no question. That the description gave Coney all the information he required, or the means of obtaining that information, is equally certain.

We may properly take another view of this question. The description in the mortgage, "bearing interest at six per cent per annum," is at least ambiguous. It clearly expresses the rate of interest, and would have done so if it had simply said "interest at six per cent." That would have been the way in which most people would have expressed it if that had been all that was intended. When therefore the note is described as "bearing interest at six per cent per annum," it is reasonable to suppose that something more was intended. And what else could it be but to indicate the time or times for the payment of interest? Finding that expression there, Coney had no right to assume that it was without meaning, and that no interest was payable until the end of five years. He knew that the notes were on interest and that it was payable at some time. As the description left that matter uncertain he was bound to inquire. Where to look for information could not be a matter of

Winchell *v.* Coney.

doubt. In some states it is held that a mortgage and the note or notes secured by it, for all the purposes of security constitute but one transaction—virtually one instrument. This must be so where the mortgage sufficiently identifies the note. Of course to comprehend the full meaning of the transaction the note as well as the mortgage must be examined. The mortgage points him directly to the note. He cannot be permitted to omit inquiry and thus say that the mortgage misled him. By so doing he would not only be taking advantage of his own negligence, but he would thereby make others responsible for that negligence.

There is no hardship in requiring him to resort to the holder of the notes for information. Suppose the mortgage had stated in terms that the interest was payable annually; even then, if a purchaser would obtain exact information he must make inquiry. From the nature of the case the mortgage could not tell how much interest would remain in arrears at any subsequent time. If important, he may as well inquire to ascertain when interest is payable as to ascertain how much is unpaid.

Again, in considering what notice the mortgage gave to Coney, we must bear in mind not only the circumstances of this particular case, but also the practice or the usual course of capitalists in loaning money. Money, especially in large amounts, is income producing, as much so as houses or lands. We should about as soon expect to find a real estate owner renting a house for five years, the whole rent payable at the expiration of the lease, as to find a man loaning twenty thousand dollars for five years with interest payable only at the maturity of the note. There is therefore no presumption that the payment of interest in such a case is to be deferred. The presumption is rather the other way.

Our conclusion is, that the mortgage as it stands secures the payment of interest annually, and that too as against subsequent purchasers. That being so, the plaintiff is entitled to a decree without a reformation of the mortgage.

We next come to the question of jurisdiction. The views above expressed make that comparatively an easy matter.

It is the ordinary case of a suit to foreclose a mortgage. One of the defendants, being a non-resident, attempted to remove the cause to the Circuit Court of the United States. That court decided that the cause was not removable, and that decision has been affirmed by the Supreme Court of the United States. The result is that the cause now is, and always has been, within the jurisdiction of the Superior Court.

The action of the Superior Court in allowing the application, approving the bond, and declining further proceedings, has not the force of an order abating the suit, or erasing it from the docket, for want of jurisdiction. The Superior Court cannot remove or prevent the removal of a cause. If the application is refused, the cause nevertheless, if removable, is removed on filing the application and bond by force of the federal statute. If not removable, the allowance of the application is without force. When a cause is removed it disappears from the docket because the case has gone out of court, not by the act of the court, but by the operation of an act of Congress. If the case is not removed it is because that act does not apply, and the case remains in the Superior Court. It logically follows that, in contemplation of law, the case all the time has remained on the docket of the Superior Court and has been within its jurisdiction. No action of the court was required to reinstate it in the docket, or to revoke the order, if it may be called an order, removing it. The action of the clerk in re-entering it on the docket, when officially notified that the case was not removed, was proper. The appeal to this court from the order of removal did not oust the Superior Court of its jurisdiction. That order being a nullity, the appeal fell with it.

So far as we can see the second application for a removal stands upon the same grounds as the first. The prayer for a reformation of the mortgage is not based upon a separate cause of action against Coney, but the reformation asked for is incidental to the foreclosure. As such it would affect both defendants, the same as the foreclosure, and both are

interested. Therefore the refusal to allow the removal was proper. But aside from that, the reformation being unnecessary, that of itself justifies the refusal.

Concerning the amendments little need be said. The objection that they were made while the court was without jurisdiction, for reasons already given, is without foundation.

The facts essential to a reformation of the deed do not, in this case, constitute a separate and distinct cause of action. That matter is incidental to the main object of the suit—a foreclosure. Therefore the objection to the amendment on that ground cannot prevail. Besides, it is a sufficient answer to these objections that the allegations respecting the reformation of the mortgage, being unnecessary, are immaterial and may be rejected as surplusage.

The amendments to the complaint for the purpose of showing that interest is due are unobjectionable.

The material questions arising on the several demurrers need not be separately noticed. The views already expressed dispose of them.

It only remains to consider some of the questions of evidence. Many of these questions arose in the effort to prove that Coney was not a *bonâ fide* purchaser, but that Carll, notwithstanding the conveyance, was the real owner of the equity of redemption. As we have assumed that Coney was a *bonâ fide* purchaser to the extent at least of $1,100, and as we are of the opinion that the plaintiff nevertheless is entitled to a decree against him, those questions are unimportant and need not be noticed.

Another question related to the alleged mistake. That, too, may be laid out of the case.

The conversations between the plaintiff and Carll are of no importance. They seem to have been offered solely for the purpose of affecting the question relating to the time when interest was payable as showing the practical construction adopted by the parties. As the written instruments taken together are free from ambiguity, we cannot see that any such evidence was necessary, or, strictly speaking, admissible for that purpose. But we cannot see that either

defendant was harmed by it, and therefore the finding is not vitiated by its admission.

The other evidence objected to was offered for the purpose of proving the value of the property, and that for the purpose of fixing the time to be limited for redemption. This too is of little consequence; for if the evidence was clearly inadmissible, we should advise the Superior Court to ascertain the value by competent testimony and pass a decree. The testimony of Mr. Treat, that the buildings could be re-produced for $30,000, tended to show the value of the buildings now standing, and was clearly admissible. The testimony of Mr. Wall, an expert, for the purpose of showing the rental value of the property, is less clear. He stated what in his judgment the rental value was. Ordinarily the rents actually received, deducting therefrom the expense, would be more satisfactory. But that being a matter peculiarly and perhaps solely within the knowledge of Carll, we cannot say that the court erred in not compelling the plaintiff to make Carll his witness. That the rental value, when shown, is competent evidence of value cannot be doubted.

For these reasons the Superior Court is advised to render judgment for the plaintiff.

In this opinion the other judges concurred.